FILED
1-21-08
JUL 2 1 2008 RC

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 08 CR519   Kocoras |
| | ) | Valdez |
| v. | ) | |
| | ) | Filed: _____ |
| JOEL M. GOSTOMELSKY, | ) | |
| | ) | Violations: 18 U.S.C. §§ 371 and |
| | ) | 201(c)(1)(B) |
| Defendant. | ) | |

## AMENDED PLEA AGREEMENT

The United States of America and Joel M. Gostomelsky ("Defendant"), hereby enter into

the following Plea Agreement pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal

Procedure ("Fed. R. Crim. P."):

### RIGHTS OF DEFENDANT

1.      The Defendant understands his rights:

      (a)      to be represented by an attorney;

      (b)      to be charged by Indictment;

      (c)      to plead not guilty to any criminal charge brought against him;

      (d)      to have a trial by jury, at which he would be presumed not

guilty of the charges and the United States would have to prove every

essential element of the charged offenses beyond a reasonable doubt for

him to be found guilty;

      (e)      to confront and cross-examine witnesses against him and to

subpoena witnesses in his defense at trial;

      (f)      not to be compelled to incriminate himself;

(g)     to appeal his conviction, if he is found guilty; and

(h)     to appeal the imposition of sentence against him.

## AGREEMENT TO PLEAD GUILTY
## AND WAIVE CERTAIN RIGHTS

2.     Defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(g) above. Defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2241 or § 2255, that challenges the sentence imposed by the Court if that sentence is within or below the Government's Sentencing Guidelines calculations set forth in Paragraph 13 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b). Pursuant to Fed. R. Crim. P. 7(b), Defendant will waive Indictment and plead guilty at arraignment to a two-count Information to be filed in the United States District Court for the Northern District of Illinois, Eastern Division.

3.     Count One of the Information will charge Defendant with participating in a conspiracy to commit an offense against the United States, that is, to willfully violate 18 U.S.C. § 208(a) by agreeing to allow Individual A (an employee of the executive branch of the United States Government) to participate personally and substantially as a Government employee in a matter in which Individual A and his family had a substantial financial interest from in or about March 2000 through at least April 2007, in violation of 18 U.S.C. § 371. Count Two of the Information will additionally charge Defendant with directly or indirectly receiving, accepting, or agreeing to receive or accept things of value personally in the form of gratuities for or because of

- 2 -

official acts performed or to be performed by Defendant within five years of the date of this Plea

Agreement in violation of 18 U.S.C. § 201(c)(1)(B).

    4.    Defendant, pursuant to the terms of this Plea Agreement, will plead guilty to the

criminal charges described in Paragraph 3 above and will make a factual admission of guilt to the

Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 5 below.  The United

States agrees that at the arraignment it will stipulate to the release of Defendant on his personal

recognizance, with permission to travel outside of this jurisdiction, subject to the condition that

Defendant not commit a Federal, State, or local crime, pending the sentencing hearing in this

case pursuant to 18 U.S.C. § 3143.

**FACTUAL BASIS FOR OFFENSES CHARGED**

    5.    Had this case gone to trial, the United States would have presented evidence

sufficient to prove the following facts:

    **Count I:  Conspiracy to Commit Acts Affecting a Personal Financial Interest**

    (a)    For purposes of this Plea Agreement as it relates to Count One of the Information,

    the "relevant period" is that period beginning in or about March 2000 and

    continuing through at least approximately April 2007.  During the relevant period,

    Defendant was employed as the Director of the Department of Veterans Affairs'

    Consolidated Mail Outpatient Pharmacy in Hines, Illinois ("Hines CMOP").  The

    Hines CMOP employs full-time or "specialist" pharmacists, part-time

    pharmacists, pharmacist technicians, and pharmacist aides, many of whom are not

    government employees, but who are instead contracted from outside staffing

    agencies on a temporary basis.

- 3 -

(b)     During the relevant period, Individual A was employed as the Associate

Director of the Hines CMOP.  Individual A reported to, and was directly

supervised by Defendant.  Individual A had input into, as well influence over, the

contracting process and purchase order decisions of the Hines CMOP as they

pertained to temporary pharmacist staffing.

(c)     Early in 2000, Defendant agreed to Individual A's proposal that the Hines CMOP

fulfill its temporary pharmacist staffing needs by utilizing the services of

Company A, a temporary staffing company that would be owned by Individual B,

who is Individual A's spouse, based on Individual A's representation that it would

be less expensive.  Company A, however, was not yet incorporated and Defendant

understood that Company A was not approved as a General Services

Administration Schedule holder for providing temporary staffing services.

Individual A therefore recommended to Defendant that the Hines CMOP contract

with a second company, "Company B," which would then subcontract temporary

pharmacist staffing services back to Company A.

(d)     On or about May 17, 2000, prior to the award of any purchase orders or

subcontracts for temporary pharmacist staffing to Company A or Company B at

the Hines CMOP, Defendant sent an e-mail to his superior, the National CMOP

Director, seeking clearance for Company A to do business with the Hines CMOP,

in light of the fact that Individual B (Individual A's spouse) was the purported

owner of Company A and Individual A was employed by the government as the

Associate Director of the Hines CMOP.  Defendant misrepresented in the e-mail

that "[Individual A] is not involved in the ordering of temporary pharmacists." Defendant omitted the material fact that Individual A would interview and hire the pharmacists employed by Company A to work at the Hines CMOP. At that time, Defendant knew that Individual A would be interviewing and hiring Company A's pharmacists.

(e)    On or about May 18, 2000, the National CMOP Director responded to Defendant via e-mail and cleared the conflict of interest, stating: "As long as [Individual A] isn't directly involved in [Company A] and you insulate him from responsibility of contact with the company from the CMOP side, I do not see a problem . . . ."

(f)    On or about June 9, 2000, shortly after receiving clearance from the National CMOP Director, the Hines CMOP entered into its first purchase order with Company B, which then immediately subcontracted the purchase order's entire requirements for temporary pharmacists to Company A.

(g)    At the time of his e-mail to the National CMOP Director, and up until at least April 2007, Defendant knew that Individual A had influence over the contracting process and purchase order decisions of the Hines CMOP relating to temporary pharmacist staffing. In addition, Defendant knew that Individual A would exercise control over Company A's employees at the Hines CMOP.

(h)    During the relevant period, Defendant knew that Individual B (Individual A's spouse) exercised little or no control over the day-to-day business of Company A at the Hines CMOP, and she was not actively managing the employees of Company A who worked at the Hines CMOP.

- 5 -

(i)     During the relevant period, Individual A repeatedly sought Defendant's approval
        to renew the CMOP's purchase orders and agreements with Company B, thereby
        enabling Company B to continue subcontracting the provision of temporary
        pharmacist services to Company A at the Hines CMOP.

(j)     Within the relevant period, Defendant also knew that Individual A negotiated with
        him for pay increases for the temporary pharmacists, and that Individual A crafted
        a Scope of Work justifying a higher pay rate for certain temporary pharmacists
        who worked full-time at the Hines CMOP.

(k)     In or about September 2002, VA contracting officials raised concerns regarding
        the apparent conflict of interest between Individual A and Company A, and
        Company A was forced to seek an ethics clearance from the VA's Office of
        General Counsel.  On or about September 26, 2002, Individual A sent an e-mail to
        Defendant and suggested that Defendant forward the representations set forth
        therein to the VA's counsel.  The e-mail represented in part: "[Individual A] does
        not initiate, request or sign off on the purchase order for the services [being
        provided by Company A] nor is he a first line supervisor for the temporary staff."
        On or about September 27, 2002, Defendant forwarded Individual A's text almost
        verbatim to VA's counsel by e-mail.  After a later telephone conversation with
        Defendant, the VA counsel replied to Defendant by e-mail on October 10, 2002,
        and cleared the conflict of interest.  In this e-mail, the VA's counsel stated, "I
        reach this conclusion based on the representation that [Individual A] has *no role*
        in the acquisition process for these temporary staffing services.  Additionally, and

- 6 -

as I noted in our telephone conversation earlier this morning, [Individual A] should be removed from the process of reviewing and/or deciding employment actions for these temporary staff, such as disciplinary actions, up to and including termination. That way the Agency can effectively rebut any allegation in the future that [Individual A] made management decisions which may have benefitted his wife's business [Company A]." (Emphasis added.)

(l)    Defendant knew that, contrary to the representations made to, and instruction received from, the VA's counsel, Individual A did have a role in the acquisition process for temporary pharmacist staffing services, and Individual A was actively involved in the hiring and day-to-day supervision of pharmacists who worked at the Hines CMOP on behalf of Company A.

## Count II:  Accepting Illegal Gratuities

(m)    "Company C," is a distributor that has supplied a wide range of goods to the Hines CMOP from at least 1998 through at least 2007.

(n)    Within the five years preceding the filing of this Plea Agreement, Defendant, a public official within the definition of 18 U.S.C. § 201(a)(1) in a high-level decision-making or sensitive position, directly or indirectly received, accepted, or agreed to receive or accept things of value personally in the form of gratuities from the vice president of Company C, "Individual C," because of official acts performed or to be performed by Defendant favoring Company C concerning the award of purchase orders in violation of 18 U.S.C. § 201(c)(1)(B).

(o)    Prior to Fiscal Year 2006, Company C was awarded numerous purchase orders for

- 7 -

providing supplies to the Hines CMOP that should have been awarded via competitive bidding. Had it not been for the gratuities received from Individual C and Company C, Defendant would have sought other companies that could have provided these goods or he would have instructed his purchasing officer to devote more effort into looking for such other companies.

(p)     In early August 2005, a VA purchasing agent discussed with Defendant the award of a certain supply contract put up for bid by the Hines CMOP where Company C was the incumbent supplier. When Defendant learned that the contract would be awarded to a different company due to that company's lower bid, Defendant notified the relevant VA purchasing agent and VA counsel that the contract's Statement of Work was insufficient, and would need to have mandatory performance requirements added, and then re-bid. When the contract was re-bid, Company C was again not the low bidder. Through Defendant's influence, approximately $659,788 in a "buy ahead" purchase was placed with Company C, when the items could have been purchased under the new contract from the winning bidder.

(q)     Had it not been for the gratuities received from Individual C and Company C, Defendant would not have insisted on adding the additional performance factors to the revised Statement of Work for the Hines CMOP's mailing supply needs, nor would Defendant have participated in or approved this 2005 "buy-ahead" purchase for mailing supplies.

(r)     The gratuities received from Individual C and Company C total approximately

- 8 -

$4,500, and included sporting event tickets, transportation upgrades and lodging, lunches, entertainment, and miscellaneous household goods. Individual C and Company C gave these items to Defendant from at least 1998 through at least 2005.

## POSSIBLE MAXIMUM SENTENCE

6.     Defendant understands that the statutory maximum penalty which may be imposed against him upon conviction for a violation of 18 U.S.C. § 371 to commit an offense against the United States is:

(a)     a term of imprisonment for not more than five (5) years;

(b)     a fine of not more than the greatest of (1) $250,000; (2) twice the gross pecuniary gain derived from the crime; or (3) twice the gross pecuniary loss caused to the victims of the crime (18 U.S.C. § 3571(b)(3) and (d)); and

(c)     a term of supervised release of one (1) year following any term of imprisonment.  (18 U.S.C. §§ 3559(a)(6) and 3583(b)(3); *see also* United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") § 5D1.2(a)(3)).  If Defendant violates any condition of supervised release, the defendant could be imprisoned for up to one (1) year.  (18 U.S.C. § 3583(b)(3) and (e)(3)).

7.     In addition, Defendant understands that upon conviction for a violation of 18 U.S.C. § 371, pursuant to 18 U.S.C. § 3013(a)(2)(A), the Court is required to order Defendant to pay a $100.00 special assessment.

8.     Defendant understands that the statutory maximum penalty which may be

- 9 -

imposed upon him for a conviction for violating 18 U.S.C. § 201(c)(1)(B) is:

      (a)     a term of imprisonment for not more than two (2) years;

      (b)     a fine of not more than the greatest of (1) $250,000; (2) twice the gross pecuniary gain derived from the crime; or (3) twice the gross pecuniary loss caused to the victims of the crime (18 U.S.C. § 3571(b)(3) and (d)); and

      (c)     a term of supervised release of one (1) year following any term of imprisonment, (18 U.S.C. §§ 3559(a)(5) and 3583(b)(3); *see also* U.S.S.G. § 5D1.2(a)(3)), and if Defendant violates any condition of supervised release, Defendant could be imprisoned for up to one (1) year.  (18 U.S.C. § 3583(b)(3) and (e)(3)).

     9.     In addition, Defendant understands that upon conviction for a violation of 18 U.S.C. § 201(c)(1)(B), pursuant to 18 U.S.C. § 3013(a)(2)(A), the Court is required to order Defendant to pay a $100.00 special assessment.

## SENTENCING GUIDELINES

     10.     Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing, along with the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing sentence.  Defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard.  Defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).  Pursuant to U.S.S.G. § 1B1.8, the United States agrees that self-incriminating

information that Defendant provides to the United States pursuant to this Plea Agreement will not be used in determining Defendant's applicable Guidelines range, except to the extent provided in U.S.S.G. § 1B1.8(b).

## SENTENCING AGREEMENT

11.    Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States agrees that it will recommend, as the appropriate disposition of this case, that the Court impose a period of incarceration within the range of 10 to 16 months, consistent with an Offense Level of 12 under the Sentencing Guidelines, reflecting a two-level downward departure, as described in Paragraph 14. The Defendant is free to recommend, as an appropriate disposition of the case, a sentence below the applicable Guidelines range based on 18 U.S.C. § 3553(a). The Defendant understands that the United States will oppose the Defendant's recommendation.

12.    The parties agree that for the purpose of calculating the appropriate advisory Guidelines range, there exists no aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines, justifying a departure pursuant to U.S.S.G. § 5K2.0. Both parties agree that they will not seek or support any Sentencing Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The parties each reserve the right to argue for the amount of restitution and fine that they believe is appropriate and consistent with the Sentencing Guidelines, and the Defendant understands that the United States may argue for a fine up to that provided by Sentencing Guidelines § 5E1.2

13.    The United States and the Defendant agree that the Sentencing Guidelines calculations relevant to the Defendant are as follows:

(a)     Pursuant to U.S.S.G. § 3D1.2, the parties agree that the two counts contained in the Information involve substantially the same harm, and should accordingly be grouped together for sentencing purposes.

(b)     As a violation of 18 U.S.C. § 201(c)(1)(B) is the more serious offense in this matter than the violation of 18 U.S.C. § 371 (to violate 18 U.S.C. § 208), the Guidelines Section applicable to a violation of Section 201(c)(1)(B), U.S.S.G. § 2C1.2, should be used to determine Defendant's Base Offense Level.

(c)     Pursuant to U.S.S.G. § 2C1.2(a)(1), Defendant's Base Offense Level is 11, as Defendant was a public official.  In addition, because the offense involved more than one gratuity, and because Defendant was in a high-level decision-making or sensitive position, a six-level increase is appropriate pursuant to U.S.S.G. §§ 2C1.2(b)(1) and (b)(3).

(d)     Defendant is entitled to a two-level decrease under U.S.S.G. § 3E1.1(a) for Acceptance of Responsibility, and the United States agrees to recommend an additional one-level decrease under U.S.S.G. § 3E1.1(b) resulting in a Final Offense Level of 14.

14.     The United States and the Defendant agree that the applicable Guidelines incarceration range exceeds the Government's recommended sentence set out in Paragraph 11 above.  Subject to the full and continuing cooperation of Defendant, as described in Paragraph 17 of this Plea Agreement, and prior to sentencing in this case, the United States agrees that it will make a motion, pursuant to U.S.S.G. § 5K1.1, for a two-level downward departure from the Guidelines fines and incarceration ranges in this case and will request that the Court impose a

- 12 -

term of incarceration between 10 and 16 months, and a fine between $3,000 and $30,000 as appropriate under Chapter 5, Part A of the Guidelines and U.S.S.G. § 5E1.2(c), because of the Defendant's substantial assistance in the government's prosecutions of violations of federal law relating to the procurement of goods and services at the Hines CMOP. The Defendant acknowledges that the decision whether he has provided substantial assistance in any prosecutions and has otherwise complied with the terms of the Plea Agreement is within the sole discretion of the United States. It is understood that, should the United States determine that the Defendant has not provided substantial assistance in any investigations or prosecutions, or should the United States determine that the Defendant violated any provision of this Plea Agreement, such a determination will release the United States from any obligation to file a motion pursuant to U.S.S.G. § 5K1.1, but will not entitle the Defendant to withdraw his guilty plea once it has been entered. The Defendant further understands that whether or not the United States files a motion pursuant to U.S.S.G. § 5K1.1, the sentence to be imposed on him remains within the sole discretion of the sentencing Judge.

15.    Subject to the ongoing, full, and truthful cooperation of Defendant described in Paragraph 17 of this Plea Agreement, and before sentencing in the case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of Defendant's cooperation and his commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to Defendant's involvement in the charged offense, and all other relevant conduct. To enable the Court to have the benefit of all relevant sentencing information, the United States hereby requests, and Defendant does not oppose, that sentencing be postponed until his cooperation is complete as referenced under Paragraph 17(e).

16.    The United States and Defendant understand that the Court retains complete discretion to accept or reject either party's sentencing recommendation. The Defendant understands that, as provided in Fed. R. Crim. P. 11(c)(3)(B), if the Court does not impose a sentence consistent with either party's sentencing recommendation, he nevertheless has no right to withdraw his plea of guilty.

## DEFENDANT'S COOPERATION

17.    Defendant will cooperate fully and truthfully with the United States in the prosecution of this case; the conduct of the current investigation of violations of federal criminal laws involving the procurement of goods and services at the Department of Veterans Affairs' Hines, Illinois, CMOP; any other federal investigation resulting therefrom; and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding"). The ongoing, full, and truthful cooperation of Defendant shall include, but not be limited to:

(a)    producing all non-privileged documents, including claimed personal documents, and other materials, wherever located, in the possession, custody, or control of Defendant, requested by attorneys and agents of the United States;

(b)    making himself available for interviews, not at the expense of the United States, upon the request of attorneys and agents of the United States;

(c)    responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making false statements (18 U.S.C. § 1001) and obstruction of justice

- 14 -

(18 U.S.C. § 1503, *et seq.*);

(d)      otherwise voluntarily providing the United States with any non-privileged material or information, not requested in (a) - (c) of this paragraph, that he may have that is related to any Federal Proceeding; and

(e)      when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings, fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401–402), and obstruction of justice (18 U.S.C. § 1503, *et seq.*).

## GOVERNMENT'S AGREEMENT

18.      Subject to the full, truthful, and continuing cooperation of Defendant, as described above in Paragraph 17 of this Plea Agreement, and upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of sentence, the United States will not bring further criminal charges against Defendant for any act or offense committed before the date of this Plea Agreement that relates to the procurement of goods or services for the Hines, Illinois, Department of Veterans Affairs' CMOP ("Relevant Offenses"). The non-prosecution terms of this paragraph do not apply to civil or administrative matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence.

## REPRESENTATION BY COUNSEL

19.      Defendant has reviewed all legal and factual aspects of this case with his attorney and is fully satisfied with his attorney's legal representation. Defendant has thoroughly reviewed

this Plea Agreement with his attorney and has received satisfactory explanations from his attorney concerning each paragraph of this Plea Agreement and alternatives available to Defendant other than entering into this Plea Agreement. After conferring with his attorney and considering all available alternatives, Defendant has made a knowing and voluntary decision to enter into this Plea Agreement.

## VOLUNTARY PLEA

20.     Defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The United States has made no promises or representations to Defendant as to whether the Court will accept or reject either party's sentencing recommendations as set forth in this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

21.     Defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that Defendant has failed to provide full and truthful cooperation, as described in Paragraph 17 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify Defendant or his counsel in writing by personal or overnight delivery or facsimile transmission and may also notify his counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and Defendant shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. Defendant agrees that, in the event that the United States is released from its obligations under

- 16 -

this Plea Agreement and brings criminal charges against Defendant for any Relevant Offense, the statute of limitations period for such offense will be tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

22.    Defendant understands and agrees that in any further prosecution of him resulting from the release of the United States from its obligations under this Plea Agreement based on Defendant's violation of the Plea Agreement, any documents, statements, information, testimony, or evidence provided by him to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against him in any such further prosecution. In addition, Defendant unconditionally waives his right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

## ENTIRETY OF AGREEMENT

23.    This Plea Agreement constitutes the entire agreement between the United States and Defendant concerning the disposition of the criminal charges in this case.  This Plea Agreement cannot be modified except in writing, signed by the United States and Defendant.

24.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

DATED:                              Respectfully submitted,


BY:_____     BY:_____
    JOEL M. GOSTOMELSKY             ERIC C. HOFFMANN
    Defendant                       Illinois Bar #6243122


                                    _____
                                    JASON C. TURNER
                                    Illinois Bar #6226269


BY:_____         _____
    BARRY A. SPECTOR                ERIC L. SCHLEEF
    Counsel for Joel M. Gostomelsky  Illinois Bar #6275859

                                    Attorneys
                                    Antitrust Division,
                                    U.S. Department of Justice
                                    209 S. LaSalle Street, Suite 600
                                    Chicago, Illinois 60604

                                    Telephone: (312) 353-7530
                                    Facsimile:  (312) 353-1046